Marc E. Elias (D.C. Bar No. 442007)
(*Pro hac vice*)
Jacki L. Anderson (Ill. Bar No. 6312256)
(*Pro hac vice*)
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile:  202.654.6211
Email: MElias@perkinscoie.com
        JackiAnderson@perkinscoie.com

Sambo Dul (Ariz. Bar No. 030313)
(*Pro hac vice*)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: 602.351.8000
Facsimile:  602.648.7000
Email: SDul@perkinscoie.com

Bradley Schrager (Nev. Bar No. 10217)
Daniel Bravo (Nev. Bar No. 13078)
WOLF RIFKIN SHAPIRO SCHULMAN & RABKIN, LLP
3556 East Russell Road, Second Floor
Las Vegas, Nevada 89120
Telephone: 702.341.5200
Facsimile: 702.341.5300
Email: BSchrager@wrslawyers.com
        DBravo@wrslawyers.com

*Attorneys for Plaintiffs Nora Luna, Bilal Shabazz,
Diane Crump-Richmond, Susan Florian, and Demi
Falcon*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NORA LUNA; BILAL SHABAZZ; DIANE CRUMP-RICHMOND; SUSAN FLORIAN; and DEMI FALCON,<br><br>               Plaintiffs,<br><br>     v.<br><br>BARBARA CEGAVSKE, in her official capacity as the Nevada Secretary of State; and JOSEPH GLORIA, in his official capacity as the Clark County Registrar of Voters,<br><br>               Defendants. | No. 2:17-cv-02666-JCM-CWH<br><br>**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT NEVADA SECRETARY OF STATE'S MOTION TO DISMISS AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION</u>** |

137676341.2

1

## I.     INTRODUCTION

The arguments in the Secretary of State's Consolidated Opposition to Plaintiffs' Motion for Preliminary Injunction and Motion to Dismiss (the "Consolidated Opposition and Motion") (ECF No. 34) are premised on a mischaracterization of the nature and scope of this case, as well as a misunderstanding of the applicable legal standards. The Court should deny the Secretary of State's Motion to Dismiss because, contrary of the Secretary of State's assertions, Plaintiffs have stated viable claims under the First and Fourteenth Amendments to the United States Constitution, Section 2 of the Voting Rights Act ("VRA"), and the Guarantee Clause in Article IV, Section 4 of the Constitution. Further, nothing in the Secretary of State's Consolidated Opposition and Motion undermines Plaintiffs' showing that they are entitled to a preliminary injunction. For reasons set forth below, the Court should deny the Secretary of State's Motion to Dismiss and grant Plaintiffs' Motion for Preliminary Injunction.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint, which needs only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). At this stage, courts must accept "all factual allegations [] as true and construe the pleadings in the light most favorable to the nonmoving party." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017). Further, all reasonable inferences must be drawn in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 (9th Cir. 2008). Dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Ass'n for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

### B.     Preliminary Injunction

A court should grant a preliminary injunction if the plaintiff shows: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public

1

137676341.2

1   interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction

2   is also appropriate when "a plaintiff raises 'serious questions' as to the merits and 'the balance of

3   hardships tips sharply in [plaintiff's] favor,'" so long as a plaintiff still establishes irreparable

4   harm and that the injunction is in the public interest. *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1103,

5   n. 4 (9th Cir. 2016) (alteration in original) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d

6   1127, 1135 (9th Cir. 2011)).

### III.     ARGUMENT

**A.       The Secretary of State's Motion to Dismiss Should be Denied.**

**1.       <u>The Secretary of State Misconstrues Plaintiffs' Claims</u>**

10   As an initial matter, the Secretary of State's arguments for dismissal of Plaintiffs' claims,

11   in addition to failing on the legal merits, are premised on a mistaken account of the scope and

12   nature of Plaintiffs' claims.

13   *First*, the Secretary of State wrongly insists that "[e]very criticism [Plaintiffs] level against

14   *this* prospective recall applies, by definition, to every by-the-book recall" and, therefore, "a

15   victory for Plaintiffs would effectively mean that *all* recall elections are always unlawful." (ECF

16   No. 24 at 2, 4). These statements plainly misconstrue the nature and scope of Plaintiffs' claims.

17   Plaintiffs do not challenge any and all recalls as the Secretary of State insists. Instead, Plaintiffs

18   are challenging the scope and consequences of Nevada's broad recall laws only as applied to the

19   current recall efforts in Senate Districts 5 and 6, under the specific circumstances here: when

20   recalls are used for purely political purposes, to force an unjustified do-over of an indisputably

21   legitimate election, in the absence of any wrongdoing by the elected official or any other cause for

22   recall. Under such circumstances, a recall election serves no legitimate state or public interest.

23   Indeed, "[p]olitical patronage is not a legitimate state interest," much less a compelling or

24   important one. *Graves v. McElderry*, 946 F. Supp. 1569, 1581 (W.D. Okl. 1996) (citing *Rutan v.*

25   *Republican Party of Ill.*, 497 U.S. 62 (1990)); *see also San Francisco Cnty. Democratic Cent.*

26   *Comm. v. March Fong EU*, 826 F.2d 814, 831 (9th Cir. 1987) ("[A] state has no interest in

27   [regulations] . . . for the purpose of helping [political parties] win or retain voter support.").

28

2

137676341.2

1    *Second*, the Secretary of State argues that "[t]he types of burdens that each Plaintiff claims

2    to face in participating in this prospective recall election are precisely those faced by every

3    Nevadan elector." (ECF No. 34 at 1). Even if that statement were true, it is entirely irrelevant for

4    the purposes of Plaintiffs' First and Fourteenth Amendment claim, which does not require

5    Plaintiffs to establish that the burdens they face are different from, or more severe than, burdens

6    faced by other voters. (*See* Plaintiffs' Motion for Preliminary Injunction, ECF No. 17 at 6-11

7    (discussing the *Anderson-Burdick* standard and applying it to the facts in this case)). Indeed,

8    where, as here, there is "not a legitimate state interest, the Court must hold there is *no burden*

9    upon [] citizens' First and Fourteenth Amendment rights *which would be justified* by" the

10   application of the Nevada's recall laws to the recall efforts at issue. *See Graves*, 946 F. Supp. at

11   1581 (emphasis added). Further, the fact that other voters may face the same burdens is not a

12   defense against a claim under Section 2 of the VRA if minority voters, under the totality of the

13   circumstances, are disparately impacted. In a Section 2 disparate impact analysis, "the Court must

14   account for both the likelihood that minority voters will face a given burden and their relative

15   ability to overcome the burden," as well as acknowledge the "reality that a burden that may be

16   insignificant to one demographic may be great for another." *Sanchez v. Cegavske*, 214 F. Supp.

17   3d 961, 972 (D. Nev. 2016).

18        *Finally*, the Secretary of State claims that "a recall election is just that—an election—and

19   as such inevitably pervaded by partisan preference." (ECF No. 34 at 4). This statement is

20   misguided. Though elections themselves are partisan events in which voters pick and choose

21   candidates based on their preferences, partisan or otherwise, whether the results of a particular

22   election *is allowed to stand* and whether a particular election, here, a special recall election, *is*

23   *held at all* should not be driven solely by partisan interests, without any regard for the resulting

24   consequences for voters and disruption to representative democracy.

25            **2.    Plaintiffs Have Stated a Claim under the First and Fourteenth**
               **Amendments**
26

27        The First and Fourteenth Amendments prohibit state and local election laws and practices

28

3

1    that unduly burden the right to vote in the absence of a sufficient, countervailing state interest. To

2    resolve these challenges, courts apply the *Anderson/Burdick* test, which "is a sliding scale test,

3    where the more severe the burden, the more compelling the state's interest must be." *Ariz. Green*

4    *Party v. Reagan*, 838 F.3d 983, 988 (9th Cir. 2016). The Secretary of State does not dispute the

5    applicable legal standard. And more significantly, the Secretary does not, because she cannot,

6    dispute any of Plaintiffs' allegations regarding the burdens they would face in having their

7    previously-cast votes nullified and in having to participate in a special, off-cycle recall election.

8    (*See* Compl., ECF No. 1 at 10-15; *see also* Motion for Preliminary Injunction, ECF No. 17 at 7-

9    22). Instead, the Secretary of State *admits* that Plaintiffs would face "relative burdens," including

10    transportation and time costs, in order to participate in a recall election.  (*See* ECF No. 34 at 8).

11        Further, though the Secretary of State takes issue with Plaintiffs' argument that application

12    of Nevada's recall laws here does not further any state interest, she identifies no specific

13    legitimate state interest that would justify the challenged application of Nevada's recall laws. The

14    Secretary of State only alludes vaguely to a historical purpose in allowing citizens who "find that

15    officials have come to disserve them . . .[to] dismiss this agent of their power." (ECF. No. 34 at

16    8). Indeed, the Secretary of State goes on to assert that "the state's interest in recalls … never

17    extends beyond this high level of generality." (*Id.*) Even crediting this assertion as a legitimate

18    purpose for Nevada's recall laws generally, it says nothing about what, if any, interests the state

19    has in the broad scope of those laws and their application to the circumstances challenged here—

20    where there is no justification or cause for the recall besides partisan political advantage.  Indeed,

21    the very purpose identified by the Secretary of State suggests the existence of some change in

22    circumstance underlying any need for citizens to dismiss elected officials of their power mid-

23    term, and the Secretary of State does not dispute that no such circumstances exist here. Moreover,

24    the Secretary of State makes no effort to explain how any legitimate state interest weighs against

25    and justifies the resulting burdens on the right to vote. *See Burdick v. Takushi*, 504 U.S. 428, 434

26    (1992) (requiring that courts "tak[e] into consideration 'the extent to which [the state's] interests

27    make it necessary to burden the plaintiff's rights.'") (quoting *Anderson v. Celebrezze*, 460 U.S.

28

4

1   780, 789 (1983)).

2        The Secretary of State's arguments are plainly insufficient to meet her burden under Rule

3   12(b)(6), which requires that the Court accept "all factual allegations [] as true and construe the

4   pleadings in the light most favorable to the nonmoving party." *Friedman*, 855 F.3d at 1051.

5   Indeed, dismissal is proper only "if it appears beyond doubt that the non-movant can prove no set

6   of facts to support its claims." *Ass'n for Los Angeles Deputy Sheriffs*, 648 F.3d at 991. The

7   Secretary of State does not come close to making this necessary showing and her motion to

8   dismiss Plaintiffs' First and Fourteenth Amendment claim should be denied.

9        **3.**    **Plaintiffs Have Stated a Claim under Section 2 of the VRA**

10        The Secretary of State's argument that Plaintiffs have not stated a claim under Section 2 of

11   the VRA similarly fails.

12        *First*, the Secretary of State argues that Plaintiffs have failed to allege state action serving

13   as a basis of liability under Section 2 of the VRA. (ECF No. 34 at 8-11). This argument, however,

14   is based on an erroneous understanding of Plaintiffs' claims and the applicable law. Section 2 of

15   the VRA prohibits the enforcement of a "voting qualification[,] prerequisite[,] or standard,

16   practice, or procedure" that has the purpose or result of denying or abridging the right to vote on

17   account of race, color, or membership in a language minority group. 52 U.S.C. § 10301(a).

18   Nothing in the statutory language carves out recalls from the reach of the VRA, which the

19   Supreme Court has stated should be read to "provide[] 'the broadest possible scope.'" *Chisom v.*

20   *Roemer*, 501 U.S. 380, 403 (1991). In any case, here, Plaintiffs are challenging government

21   action, including the issuance of a call for a recall election, the holding of a recall election, and

22   the removal of Senators Woodhouse and Cannizzaro from office prior to the completion of a

23   normal four year-term. Courts have held that such actions constitute "standard[s], practice[s], or

24   procedure[s]" that are "imposed or applied by any State or political subdivision" for the purposes

25   of the VRA. *Id.* at 391. *See, e.g., Henderson v. Harris*, 804 F. Supp. 288, 293 (M.D. Ala. 1992)

26   (holding that the "calling of a special election was a change in a standard, practice or procedure

27   with respect to voting" under the VRA); *Cartagena v. Crew*, No. CV-96-3399 (CPS), 1996 U.S.

28

137676341.2

1    Dist. LEXIS 20178 (E.D.N.Y. Sept. 10, 1996) (holding that the suspension of elected board

2    members in favor of appointed trustees could constitute a voting practice or procedure under the

3    VRA).

4         Further, Plaintiffs here are not challenging any private parties' decision to "research[],

5    writ[e], file[], circulate[], and vot[e] on" a particular recall effort. (*See* ECF No. 34 at 8). Thus, the

6    situation here is clearly distinguishable from the cases the Secretary of State cites—*Padilla v.*

7    *Lever*, 463 F.3d 1046 (9th Cir. 2006), *Montero v. Meyer*, 861 F.2d 603 (10th Cir. 1988), and

8    *Delgado v. Smith*, 861 F.2d 1489 (11th Cir. 1988)—each of which involve disputes regarding the

9    specific documents created and circulated by recall and initiative proponents. In *Padilla*, for

10   example, Plaintiffs alleged that defendants violated a different provision of the VRA, 42 U.S.C. §

11   1973aa-1a, which requires that, in certain states with substantial language minority populations of

12   voting age, the state must provide election materials in the applicable minority languages, as well

13   as in English. The court held, however, that the challenged recall petition materials were not

14   subject to this specific provision of the VRA because they were not "provided" by the state and

15   county defendants.  *Padilla*, 463 F.3d at 1050; *see also Montero*, 861 F.2d at 609; *Delgado* , 861

16   F.2d at 1497. This conclusion relied on the fact that the statutory provision at issue specifically

17   limited its translation requirements to election materials that the state or political subdivision itself

18   "provides." *Padilla*, 463 F.3d at 1050. No comparable restriction exists in Section 2 of the VRA

19   or the constitutional provisions at issue in this case.

20        *Second*, the Secretary of State argues that "Plaintiffs' [VRA] theory was specifically

21   rejected by the Fifth Circuit in 1983" (ECF No. 34 at 9) in *Smith v. Winter*, 717 F.2d 191 (5th Cir.

22   1983). That case, however, is easily distinguishable on multiple grounds:

- First, *Smith* involved a facial challenge to a recall statute that specifically required cause, unlike the Nevada recall laws challenged here. Further, Plaintiffs challenge only the application of the Nevada recall laws to the recalls in the Senate Districts at issue here, for which there is no cause for recall besides partisan political advantage. *See id.*

- Second, the plaintiff in *Smith* did "not allege that the conduct complained of has the purpose or effect of denying or abridging minorities' rights to vote." *Id.* at 197. In contrast, here Plaintiffs have alleged and provided an Expert Report, along with other supporting materials, showing that the application of Nevada's recall laws in Senate

6

137676341.2

1    Districts 5 and 6 has the effect of denying minorities equal electoral opportunities.
     (Compl., ECF No. 1 at 12-28; Motion for Preliminary Injunction, ECF No. 17 at 11-24).

2

3    • Third, the plaintiff in *Smith* was the recalled official himself, whom the court held did not
       have a right to remain in office. *Smith*, 717 F.2d at 191. In reaching this conclusion, the
       *Smith* court relied on the fact that "[t]he plaintiffs point us to no authority or rationale to

4      support [their] interpretation of the right to vote, and we find none." *Id.* at 198. Here, in
       contrast, Plaintiffs have pointed to many cases that support a violation of the VRA, many

5      of which were decided decades after *Smith* and track the evolution of the law. (Complaint,
       ECF No. 1 at 12-15; Motion for Preliminary Injunction, ECF No. 17 at 12-14).

6

7    • Finally, contrary to the Secretary of State's suggestion, nowhere in *Smith* does the court
       carve out recall elections from the reach of the VRA; in fact, *Smith* expressly left the door
       open to such claims. *Smith*, 717 F.2d at 197 ("We do not intimate [ ] that allegations of

8      discriminatory misconduct of a recall process could never give rise to a claim under the
       Voting Rights Act."); *see also Cartagena,*, 1996 U.S. Dist. LEXIS 20178, at *27

9      ("Moreover, the *Winter* court acknowledges that under certain circumstances, allegations
       of discriminatory misconduct of a recall or removal process may give rise to a claim for

10     voting rights violations.").

11        *Third*, the Secretary of State misconstrues what is required under the Senate Factors and

12   the role of those factors in proving a violation of Section 2 of the VRA. Most notably, the

13   Secretary of State seems to argue that the fact that other states have a history of discrimination

14   against African-Americans and other minorities somehow negates or condones Nevada's history

15   of such discrimination. In particular, she states that "virtually everything in Plaintiffs' account of

16   failures in Nevada to honor the rights of minority residents[,] . . . Nevada has in common with

17   every state, from Maryland to California." (ECF No. 34 at 10). This statement is irrelevant,

18   however, as the VRA does not require that the state be the only one to have committed such

19   discrimination. It defies common sense and the Secretary of State points to no authority

20   suggesting that the fact that other states also have a history of racial discrimination somehow

21   excuses Nevada's history of such discrimination or otherwise makes that history immaterial for

22   purposes of the VRA's totality-of-the-circumstances analysis. Further, in baldly asserting that

23   "the sole nexus between [] past events and this future recall is their presence on Nevada soil," the

24   Secretary of State completely ignores Plaintiffs' cited evidence, including the Expert Report of

25   David Damore, on how Nevada's historical and ongoing discrimination has resulted in a host of

26   socioeconomic disparities for minorities, including in terms of poverty, employment, education,

27   and home ownership, all of which make the burdens of having to vote again in an off-cycle

28

7

137676341.2

1   special election more difficult to overcome. (*See* Complaint, ECF No. 1 at 12028; Motion for

2   Preliminary Injunction, ECF No. 17 at 11-22).

### 4.     Plaintiffs Have Stated a Claim under the Guarantee Clause

4        The Secretary of State argues that Plaintiffs have not stated a valid Guarantee Clause

5   claim because such claims are not justiciable, citing *Pacific States Telephone & Telegraph*

6   *Company v. Oregon*, 223 U.S. 118, 141 (1912). (*See* ECF No. 34 at 11). However, this argument

7   fails because it ignores subsequent pronouncements from the Supreme Court on the political

8   question doctrine. Specifically, *Baker v. Carr* detailed six factors that may render a case

9   nonjusticiable under the political question doctrine:

10           [A] textually demonstrable constitutional commitment of the issue to a coordinate
             political department; or a lack of judicially discoverable and manageable standards
11           for resolving it; or the impossibility of deciding without an initial policy
             determination of a kind clearly for nonjudicial discretion; or the impossibility of a
12           court's undertaking independent resolution without expressing lack of the respect
             due coordinate branches of government; or an unusual need for unquestioning
13           adherence to a political decision already made; or the potentiality of
             embarrassment from multifarious pronouncements by various departments on one
14           question.

15   369 U.S. 186, 217 (1962). "Unless one of these formulations is *inextricable* from the case at bar,

16   there should be no dismissal for non-justiciability on the ground of a political question's

17   presence." *Id.* (emphasis added). Indeed, the *Baker* Court explicitly rejected a categorical

18   justiciability bar for Guarantee Clause claims, explaining that its prior cases considering

19   "Guaranty Clause claims involve those elements which define a 'political question,'" referencing

20   the six factors above, "and for that reason *and no other*, they are nonjusticiable." *Id.* at 218

21   (emphasis added). "[N]onjusticiability of such claims has nothing to do with their touching upon

22   matters of state governmental organization." *Id.* Further, the Supreme Court in *New York v.*

23   *United States* again stated that "not all claims under the Guarantee Clause present nonjusticiable

24   political questions." 505 U.S. 144, 185 (1992); *see also Kerr v. Hickenlooper*, 744 F.3d 1156,

25   1173-1 (10th Cir. 2014) (holding a Guarantee Clause claim justiciable in challenge to a voter-

26   adopted state constitutional amendment that required advance approval of citizens of any new

27

28

8

1    tax), *cert. granted, judgment vacated on other grounds*, 135 S. Ct. 2927 (2015).[1]

2    **B.    Plaintiffs Are Entitled to a Preliminary Injunction**

3    For the reasons discussed in Section III.A. above and in Plaintiffs' Motion for Preliminary

4    Injunction (ECF No. 17 at 22-24), Plaintiffs are likely to succeed on the merits of their claim.

5    Plaintiffs also meet the other requirements for a preliminary injunction. Here, Plaintiffs are likely

6    to suffer to irreparable harm absent a preliminary injunction, including having their previously

7    cast votes nullified and being forced to bear the heightened burdens for voting again in a special

8    recall election to maintain support for their Senator of choice or not being able to vote at all in

9    that election.[2] Further, as a general matter, particularly when voting rights are at issue, "[t]he

10   public interest and the balance of the equities favor 'prevent[ing] the violation of a party's

11   constitutional rights." *Ariz. Dream Act Coal. v. Brewer*, 818 F.3d 901, 920 (9th Cir. 2016)

12   (citation omitted).

13   The Secretary of State's only response to Plaintiffs arguments as to irreparable harm is to

14   state that the risk of that harm has been present since Nevada enacted its recall laws nearly a

15

16   ─────────────────────

17   [1]    *California v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997), *cert. denied,* 522 U.S. 806 (1997), the one Ninth Circuit decision cited by the Secretary of State that post-dates *Baker* and *New York*, is devoid of any analysis and ignores the six factors of nonjusticiability laid out in

18   *Baker* as well as the *Baker* Court's clear rejection of a categorical bar to Guarantee Clause claims.

19   [2]    As Plaintiffs explain in their Motion to Stay the November 29, 2017 Hearing Pending State Court Legal Sufficiency Ruling (ECF No. 38), the filing of a state court complaint on November

20   13, 2017 challenging the legal sufficiency of the petition to recall Nevada Senator Joyce Woodhouse (District 5) stays any further proceedings on the recall petition, including any call for

21   a recall election. Though Nevada Revised Statutes § 306.040(5) required the court to "set the matter for hearing not later than 30 days after the complaint is filed," on November 16, 2017, the

22   state court set a hearing date of December 19, 2017. Thus, the state court stay will remain in effect at least until that date. Should the court affirm the legal sufficiency of the recall petition,

23   however, the Registrar is required by statute to issue a call for a recall election and the recall election itself must occur within 30 days of the call. *Id.*; Nev. Const. Art. 2, § 9. Given this

24   timeframe, in the absence of preliminary relief on an expedited schedule, Plaintiffs are unlikely to be able to seek relief from this Court in a timely manner after the state court rules on the legal

25   sufficiency of recall petition. *See Michigan State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1179 (6th Cir. 1986) (concluding that forcing plaintiffs seeking to challenge contribution

26   limits to ballot initiative measures to wait for an initiative to qualify to bring suit would not provide adequate opportunity for judicial review given condensed statutory timeframe (49 days)

27   between certification of the initiative to the election).

28

9

137676341.2

1   century ago. The Secretary of State cites to no authority, however, suggesting that the passage of

2   time can excuse violations of the right to vote and such a suggestion defies common sense.

3   Further, the Secretary of State's suggestion that Plaintiffs' requested relief would deny

4   other Nevadans the right to vote assumes that a recall election in the Senate Districts at issue—in

5   the absence of any cause for recall—is lawful in the first instance and ignores the preliminary

6   nature of Plaintiffs' requested relief. Plaintiffs are simply asking the Court to preserve the status

7   quo and prevent the potential violation of their rights while the Court resolves the legal questions

8   presented in this case. Absent preliminary relief, if the Court later finds Plaintiffs' claims

9   meritorious, "once the [recall] election occurs, there can be no do-over and no redress" to the

10  voters, including Plaintiffs. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224,

11  247 (4th Cir. 2014). Accordingly, consideration of the public interest and the balance of equities

12  favors the granting of a preliminary injunction.[3]

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  
_____

25  [3]   The "intolerable consequences" that the Secretary of State describes (*see* ECF No. 34 at 12-13) are overblown, couching in catastrophic terms the factual inquiry and totality-of-the-circumstances analysis that courts routinely conduct when evaluating the types of claims at issue

26  here. In any case, the Secretary of State provides no explanation as to how or why those allegations are relevant at the court's consideration of her Motion to Dismiss or Plaintiffs' Motion

27  for Preliminary Injunction.

28

10

1

## IV.   CONCLUSION

2       For the reasons set forth above, the Court should deny the Secretary of State's Motion to

3    Dismiss and grant Plaintiffs' request for a preliminary injunction.

4    Dated: November 21, 2017          **WOLF RIFKIN SHAPIRO SCHULMAN & RABKIN, LLP**

5                                      By:  /s/ *Bradley S. Schrager*
                                           Bradley Schrager, Esq.
6                                          Daniel Bravo, Esq.
                                           3556 East Russell Road, Second Floor
7                                          Las Vegas, Nevada 89120

8                                          Marc E. Elias, Esq.
                                           Jacki L. Anderson, Esq.
9                                          **PERKINS COIE LLP**
                                           700 Thirteenth Street, N.W., Suite 600
10                                         Washington, D.C. 20005-3960

11                                         Sambo Dul, Esq.
                                           **PERKINS COIE LLP**
12                                         2901 N. Central Avenue, Suite 2000
                                           Phoenix, Arizona 85012
13
                                           *Attorneys for Plaintiffs Nora Luna, Bilal Shabazz, Diane*
14                                         *Crump-Richmond, Susan Florian, and Demi Falcon*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

137676341.2

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on this 21st day of November, 2017, a true and correct copy

3  of **PLAINTIFFS' OPPOSITION TO DEFENDANT NEVADA SECRETARY OF STATE'S**

4  **MOTION TO DISMISS AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY**

5  **INJUNCTION** was served via the United States District Court CM/ECF system on all parties or

6  persons requiring notice.

7

8                                      By:   */s/ Christie Rehfeld*

9                                            Christie Rehfeld, an Employee of
                                             WOLF, RIFKIN, SHAPIRO, SCHULMAN &
10                                           RABKIN, LLP

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

137676341.2