ADAM PAUL LAXALT
  *Attorney General*
LAWRENCE VANDYKE (Bar No. 13643)
  *Solicitor General*
JOSEPH TARTAKOVSKY (Bar. No. 13796)
  *Deputy Solicitor General*
STEVE SHEVORSKI (Bar No. 8256)
  *Head of Complex Litigation*
State of Nevada, Office of the Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, Nevada 89101
(702) 486-3783
LVanDyke@ag.nv.gov
JTartakovsky@ag.nv.gov
SShevorski@ag.nv.gov

*Attorneys for Defendant Nevada Secretary of State*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| NORA LUNA; BILAL SHABAZZ; DIANE CRUMP-RICHMOND; SUSAN FLORIAN; and DEMI FALCON,<br><br>Plaintiffs,<br><br>vs.<br><br>BARBARA CEGAVSKE, in her official capacity as the Nevada Secretary of State; and JOSEPH GLORIA, in his official capacity as the Clark County Registrar of Voters,<br><br>Defendants. | Case No. 2:17-cv-02666-JCM-GWF<br><br>**DEFENDANT NEVADA SECRETARY OF STATE'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |

Recognizing that a wholesale attack on all recall elections is unlikely to get traction in this or any other Court, Plaintiffs seek in vain to portray their suit as a narrow, as-applied challenge for this recall only. Their complaint, they say, is to recall "under the specific circumstances here"—because *this* recall effort, apparently unlike all other recalls, was motivated by "purely political purposes."[1] This recall, unlike all others, could reverse a "legitimate election."[2] This recall, unlike all others, does not allege "wrongdoing" by incumbents.[3] And this recall upsets expectations, because unlike for the

---

[1] Doc. 43 at 2.
[2] *Id.*
[3] *Id.*

1

voters in every other Nevada election since 1912, the voters who elected the incumbents at issue here did *not* vote with the possibility of recall in the background. In short, this recall would "force" a "do-over" of a past election—that is, it would do precisely what the Nevada Supreme Court says *every* recall does: "a 'do-over' of an already-concluded election."[4]

### 1. Plaintiffs fail to state a claim under the First and Fourteenth Amendments (Count I).

Plaintiffs still cite no precedent in which a federal court, under the First and Fourteenth Amendments, has ever invalidated, facially or as applied, a recall petition or election. Plaintiffs instead argue that recalls serve "no legitimate state or public interest" by citing to cases that (1) do not involve a recall by citizens but (2) do involve actions by *state actors* to restrict citizens' political rights.[5]

In *Rutan v. Republican Party of Illinois*, the question was whether Illinois's governor could reserve 60,000 low-level state jobs for Republicans only.[6] In *San Francisco County Democratic Central Committee v. Eu*, the issue was whether the California Elections Code could "specify the membership of the state central [party] committees" and bar them from "endorsing candidates in party primaries."[7] In *Graves v. McElderry*, the issue was whether Oklahoma could print ballots so that the "Democratic party candidate always appears in the top position—above any Republican party candidate."[8] Governmental action was the culpable party in each case. But the very point of the venerable popular-control reform known as recall is that it is initiated, directed, and decided by the people *against* agents of the government. The state's only role in such cases is to facilitate this expression of popular will, to ensure the right of Nevadans, under their Constitution, to choose their representatives.

This means, concretely, that the state interest here is to defend the application of state law. Plaintiffs' arguments all ultimately come back to their oft-repeated, sweeping claim that this recall

---

[4] *Compare* Doc. 43 at 2, *with Strickland v. Waymire*, 126 Nev. 230, 235 (2010).
[5] Doc. 43 at 2 (citing cases discussed below).
[6] 497 U.S. 62, 65 (1990).
[7] 826 F.2d 814, 817 (9th Cir. 1987), *aff'd*, 489 U.S. 214 (1989).
[8] 946 F. Supp. 1569, 1571 (W.D. Okla. 1996).

election "serves no legitimate state or public interest."[9] And then they focus exclusively on the perceived motivations of *private* actors.[10] The state's interest in this recall election is precisely the same interest that justifies the state's ministerial role in any periodic election—allowing voters to choose a different representative if they so wish, free from improper interference (including by the state). This is a state interest of the highest order; indeed, it is the cornerstone of democracy. By contrast, a *voter's* reason for signing a recall petition, or for casting her ballot for a certain candidate, remain private interests. The state may not inquire into the "need" for this election, to use Plaintiffs' word, any more than it may sit in judgment of an election's wisdom or political consequences.[11]

**2. Plaintiffs fail to state a claim under the Voting Rights Act (Count II).**

Plaintiffs fail to offer a single case in which a recall petition or election was held invalid under Section 2 of the Voting Rights Act. Nevada cited decisions from four U.S. Courts of Appeal holding that the Voting Rights Act does not apply, for lack of state action, to direct-democracy mechanisms like initiative and recall.[12] We know of no contrary authority. And Plaintiffs' response? They offer two district-court cases from the mid-nineties, neither of which even involves recall. In fact, those cases again concern the opposite of recall: action initiated by *officials*, imposing on the electoral rights of citizens. *Henderson v. Harris* was a challenge to the maneuvers of "Pike County election officials" in calling a controversial "special election."[13] *Cartagena v. Crew* involved a complaint by school-board members about their removal by New York City's "Schools Chancellor" and "Board of Education."[14]

Nevada cited *Padilla v. Lever* (2006), the Ninth Circuit decision that ruled that recall efforts by citizens simply do not involve state action under the Voting Rights Act.[15] Plaintiffs want to read

---

[9] Doc. 43 at 2, 3, 4.
[10] *Id.* at 3 ("partisan interests"); 4 ("partisan political advantage").
[11] *Id.* at 4 ("need").
[12] *Padilla v. Lever*, 463 F.3d 1046, 1051 (9th Cir. 2006); *Delgado v. Smith,* 861 F.2d 1489, 1495-96 (11th Cir. 1988); *Montero v. Meyer*, 861 F.2d 603, 610 (10th Cir. 1988); *Smith v. Winter*, 717 F.2d 191, 193 (5th Cir. 1983).
[13] 804 F. Supp. 288, 289 (M.D. Ala. 1992).
[14] No. 96-cv-3399 CPS, 1996 WL 524394, at *1 (E.D.N.Y. Sept. 5, 1996).
[15] *Padilla*, 463 F.3d at 1051.

3

*Padilla* narrowly.  They claim that the decision was only about the highly specific query of whether 42 U.S.C. § 1973aa-1a requires certain voting materials "provided" by recall proponents to be translated into Spanish, as these materials would be if issued by the state.  *Padilla* discussed the statutory term "provided" because that was the language of the applicable VRA subsection.  But *every* subsection of the VRA applies only to state actors.  This is why the principle of the holding was broader than Plaintiffs say.  Legal commentators recognize this.[16]  No court has read the case to be limited to the VRA's translation provisions.  And, again, if the Voting Rights Act applied broadly to recall, as Plaintiffs insist, why, despite hundreds of American recalls and thousands of VRA decisions, can Plaintiffs not give one instance of a court invalidating a recall under the VRA?  They ask this Court to be the first.

Plaintiffs attempt to distinguish the Fifth Circuit's decision in *Smith v. Winter* (1983).  First, they focus on immaterial differences, such as the identity of plaintiffs, or whether Mississippi has a for-cause requirement.  (This latter difference actually *weakens* Plaintiffs' case, since for-cause requirements, found in a handful of states, often require some state evaluation of the recall's purposes, thus injecting some state action into the recall process that is absent from Nevada's recall system.)  Second, Plaintiffs miss the decision's relevance.  Plaintiffs are right that the Mississippi challengers to the recall there did not explicitly claim that the prospective recall would be *managed by officials* (like the Claiborne County Registrar) to abridge minority voting rights.[17]  But we didn't refer the Court to that part.  Rather it was the *Smith* plaintiffs' claim as to nullification of voting rights that "have already been exercised," discussed in the decision's next paragraph, that Nevada referenced.

In that passage, the Fifth Circuit dismissed the argument that the right to vote entails "not only a right for the citizen to make his voice heard in the electoral process, but the right as well to *maintain his choice* in the public office if successful."[18]  This argument, the court continued, necessarily implied that the "recall process abridges minorities' rights to effective votes by threatening the removal of the

---

[16] *See*, *e.g.*, Francesca Ambrosio, *When Courts Shouldn't Take the Initiative: Section 2 of the Voting Rights Act, Initiative Petitions, and Operation King's Dream*, 105 Mich. L. Rev. 2011, 2028 (2007).
[17] *Smith v. Winter*, 717 F.2d 191, 197 (5th Cir. 1983).
[18] *Id.* at 198 (emphasis added).

4
Defendant Secretary of State's Reply to Plaintiffs' Opposition to Motion to Dismiss –
Case No. 2:17-cv-02666-JCM-GWF

officials for whom those votes were cast."[19]  This is precisely the "vote nullification" proposition that Plaintiffs urge here, and still wrong.

Plaintiffs say that Nevada suggested that its imperfect racial history was "immaterial."[20]  No—we simply observed that a generalized past cannot itself support a VRA challenge.  Otherwise every vote, in every American jurisdiction, would be suspect.  Instead, the Ninth Circuit requires Plaintiffs to show a "causal connection" between (1) the past and (2) the vote now challenged.[21]  Plaintiffs here have shown no such nexus.

Plaintiffs claim that our observation about the ubiquity of Plaintiffs' asserted burdens is irrelevant because the burdens, though universal, might be *felt* disparately.  We just made the point that the onus that Plaintiffs claim is incidental to any recall vote.  And we directed the Court to their implicit suggestion that the same election law should apply differently depending on the voter's race.  If "off-cycle" elections—i.e., more frequent ones—themselves raise constitutional problems, Nevada's decision to move, say, from a quadrennial to a biennial vote for state Senators might be unlawful.  Plaintiffs cannot claim to be reeling from repeated recalls or living in fear of a nightmarish reality in which the losers of every vote always re-contest it.  There has *never* been a recall election against a state-level official in Nevada.[22]  Plaintiffs object to *one* possible recall—this one, the first one.

### 3.  Plaintiffs fail to state a claim under the Guarantee Clause (Count III).

Nevada showed that the U.S. Supreme Court, in *Pacific States Telephone & Telephone Co. v. Oregon* (1912), held that Guarantee Clause challenges are non-justiciable and in fact the Court so held specifically in rejecting a Guarantee Clause challenge to a direct-democracy law.[23]  Plaintiffs' response is to cite *Baker v. Carr* (1962) and suggest that this "subsequent pronouncement" undermines or muddles the holding of *Pacific States*.[24]  The problem with this is that *Baker* was an Equal Protection

---

[19] *Id.*
[20] Doc. 43 at 7.
[21] *Farrakhan v. Washington*, 338 F.3d 1009, 1019 (9th Cir. 2003).
[22] Nevada Secretary of State, *Political History of Nevada* 192 (2016 ed.), goo.gl/EJEcMd.
[23] 223 U.S. 118, 141.
[24] Doc. 43 at 8.

Clause challenge; the issue there was whether that type of challenge, in the apportionment context, was justiciable. In ruling that it was, the Court distinguished Guarantee Clause challenges from Equal Protection challenges and specifically reaffirmed the rule in *Pacific States*.[25] The Fourteenth Amendment, the Court said, is "not so enmeshed with those political question elements which render Guaranty Clause claims non-justiciable."[26] *Pacific States* controls. *Baker* left it untouched.

### 4. Conclusion

Plaintiffs say that what makes this possible recall election so problematic is that it will occur for "purely political purposes." This argument cannot be taken seriously. A recall succeeds only when a majority of voters express, by their ballots, dissatisfaction with the incumbent. Whether or in what degree a vote is "purely political" is the voter's business alone. Plaintiffs deny that they challenge "any private parties' decision" to initiate a recall. It remains a mystery, then, who they have in mind when they assail the "partisan political advantage" that allegedly motivates this effort and renders it illegal.[27]

Something sinister lurks in Plaintiffs' argument. They write that election results should not be "allowed to stand," or elections not even "held at all," when the elections are "driven solely by partisan interests."[28] But who could possibly make such an elemental determination, on which the plebiscite itself would depend? The state? Judges? Plaintiffs? Election lawyers? No system has yet been discovered in which the *free* exercise of the right to vote by private citizens can simultaneously exist with state interference with that right to supposedly prevent the taint of motivation by voters' so-called "partisan interests." Other sovereigns may empower officials to refuse to let a vote proceed when they have qualms about voter motives. But Nevada is not in the business of empowering government officials to decide whose beliefs are sufficiently unmixed with partisanship to count. In 1953, the East German regime famously declared that its people had "forfeited the confidence of the government" after the electorate manifested a lack of enthusiasm for Communist Party policies. The playwright

---

[25] *Baker v. Carr*, 369 U.S. 186, 223 (1962).
[26] *Id.* at 227.
[27] Doc. 43 at 6 ("private parties' decision"); at 4 ("partisan political advantage").
[28] *Id.* at 3.

6
Defendant Secretary of State's Reply to Plaintiffs' Opposition to Motion to Dismiss –
Case No. 2:17-cv-02666-JCM-GWF

Bertolt Brecht suggested that the easiest solution might just be for the government to dismiss the people and elect a new one.  Our tradition—our Constitution—runs in the opposite direction: we hold, as a sacred right, that the people have power to dismiss their government.

DATED this 27th day of November, 2017.

                                  ADAM PAUL LAXALT
                                  *Attorney General*

                                By: /s/ Lawrence VanDyke
                                     Lawrence VanDyke (Bar No. 13643)
                                      *Solicitor General*
                                     Joseph Tartakovsky (Bar No. 13796)
                                      *Deputy Solicitor General*
                                   Steve Shevorski (Bar No. 8256)
                                      *Head of Complex Litigation*

                                *Attorneys for Defendant Nevada Secretary of State*

**CERTIFICATE OF SERVICE**

I certify that I electronically filed this **DEFENDANT NEVADA SECRETARY OF STATE'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** with the Clerk of the Court by using the electronic filing system on November 27, 2017. I certify that the participants in this case are registered electronic filing systems users and will be served electronically.

/s/ Sandra L. Geyer
Sandra L. Geyer, an employee of
the office of the Nevada Attorney General