# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

NORA LUNA, BILAL SHABAZZ, DIANE CRUMP-RICHMOND, SUSAN FLORINA, and DEMI FALCON,

    Plaintiffs,

vs.

BARBARA CEGAVSKE, in her official capacity as the Nevada Secretary of State; and JOSEPH GLORIA, in his official capacity as the Clark County Registrar of Voters,

    Defendants.

Case No.: 2:17-cv-02666-JCM-GWF

**ORDER, FINDINGS & RECOMMENDATIONS**

**Re: Motion to Intervene (ECF No. 12)**

This matter is before the Court on the Motion to Intervene (ECF No. 12) filed by the Public Interest Legal Foundation ("Foundation") on October 30, 2017. The Plaintiffs filed their Opposition (ECF No. 27) on November 13, 2017, and the Foundation filed its Reply (ECF No. 41) on November 20, 2017. The Court conducted a hearing in this matter on December 13, 2017.

## BACKGROUND

The Public Interest Legal Foundation ("Foundation") moves to intervene in this action brought by Plaintiffs against the Nevada Secretary of State ("Secretary") and the Clark County, Nevada Registrar of Voters ("Registrar") challenging the efforts of third persons to recall three Nevada state senators pursuant to Article 2, Section 9 of the Nevada Constitution and Nevada Revised Statute (NRS) § 306. 015.[1] The Plaintiffs are registered voters, two of whom are Hispanics and two of whom are African Americans. They allege that the recall elections unduly burden and abridge their fundamental right to

---

[1] The recall effort against one of the senators failed to garner sufficient signatures to trigger a recall election.

vote in violation of the First and Fourteenth Amendments to the United States Constitution. They also allege that "because the resulting burdens on the right to vote disproportionately impact racial and language minorities, any recall elections would also result in the denial and abridgement of the right to vote on account of race and language group, in violation of Section 2 of the Voting Rights Act." Finally, Plaintiffs allege that "the recall elections threaten to upend the results of legitimate, democratic elections, as well as disrupt and impede a functioning republican form of government in violation of the Guarantee Clause of Article VI, Section 4 of the United States Constitution. *Complaint* (ECF No.1), at ¶ 4.

Plaintiffs' complaint was filed on October 16, 2017. On November 6, 2017, Plaintiffs filed a motion for preliminary injunction to enjoin the Secretary and Registrar from holding a special election, or otherwise enforcing Nevada's recall laws with respect to the subject state senators. *Motion for Preliminary Injunction* (ECF No. 17). The Registrar filed a motion to dismiss Plaintiffs' action on November 8, 2017. *Motion to Dismiss* (ECF No. 23). The Secretary filed her opposition to Plaintiffs' motion for preliminary injunction, and motion to dismiss on November 16, 2017. *Response* (ECF No. 33); *Motion to Dismiss* (ECF No. 34). The parties have filed their respective responses and reply briefs to the motion for preliminary injunction and motions to dismiss. On November 21, 2017, the Court stayed the hearing on Plaintiffs' motion for preliminary injunction and Defendants' motions to dismiss pending resolution of the state court proceeding regarding the recall effort against Senator Woodhouse and the state verification proceedings regarding the recall effort against Senator Cannizzaro. *Order* (ECF No. 42).

In her opposition to Plaintiffs' motion for preliminary injunction and motion to dismiss, the Secretary disputes Plaintiffs' assertion that Nevada's constitutional and statutory recall provisions violate the First and Fourteenth Amendments. She also disputes Plaintiffs' claim that Nevada's recall laws violate Section 2 of the Voting Rights Act, arguing that recalls do not constitute state action and are therefore outside the ambit of the Voting Rights Act. *Motion to Dismiss* (ECF No. 34), at 2, 8-11. The Secretary argues that the Voting Rights Act implements the Fifteenth Amendment, which forbids the race-based abridgment of voting rights by any state, and that Section 2 of the Act "disallows a voting 'standard, practice, or procedure' from being discriminatorily imposed 'by any State or political

subdivision.'" *Id.* at 8. She argues that Nevada's recall law does not operate in any such discriminatory manner. She further argues that four United States Courts of Appeal have "confirm[ed] that the Voting Rights Act does not apply, for lack of state action, to direct-democracy procedures like initiative and recall." *Id.* at 9 (citing *Padilla v. Lever*, 463 F.3d 1046, 1051 (9th Cir. 2006); *Montero v. Meyer*, 861 F.2d 603, 609-10 (10th Cir. 1988); and *Delgado v. Smith*, 861 F.2d 1489, 1496 (11th Cir. 1988)). In her motion to dismiss, the Registrar also argues that recall efforts against the state senators do not implicate state action and therefore do not give rise to claims against the Registrar under the Voting Rights Act or through the Fourteenth Amendment. *Motion to Dismiss* (ECF No. 23), at 2-6.

The Secretary also discusses *Smith v. Winter*, 717 F.2d 191 (5th Cir. 1983), in which the court rejected the argument that the State of Mississippi's recall law violated the rights of African-American citizens under the Voting Rights Act by threatening the removal of officials for whom minority citizens had voted. The court stated that the "right to vote" means the same thing under the Voting Rights Act as under the Fifteenth Amendment. *Id.* at 198. The plaintiffs had pointed to no authority or rationale to support their interpretation of the right to vote and the court found none to support it. *Id.* As partly quoted by the Secretary, the Fifth Circuit stated:

> It is [as] reasonable to assume that every elected official embodies the vote of at least some minority member. If we followed the plaintiff's view of the right to vote to its logical conclusion, every elected public official, whether a minority member or not, could [challenge in federal court] any state recall proceeding merely by alleging that the voting rights of an electorate containing at least one minority member were being discriminatorily abridged. Other absurd results are equally possible. For instance, if minority members vote for a candidate on the basis of a campaign promise and the candidate later breaches that promise with discriminatory effects, the minority voters could claim that their rights to vote have been rendered ineffective so as to give rise to claims under the Voting Rights Act.

*Motion to Dismiss* (ECF No. 34) at 10 (quoting *Winter*, 717 F.2d at 198-99).

Finally, the Secretary argues that Plaintiffs' challenge to Nevada's recall law based on the Guarantee Clause involves a purely political question which is not justiciable. *Id.* at 11 (citing *Pacific States Telephone & Telegraph v. Oregon*, 223 U.S. 118, 141, 32 S.Ct. 224 (1912); *State of Nevada v. Watkins*, 914 F.2d 1545, 1559 (9th Cir. 1990) and *State of Cal. v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997)).

The Foundation states that it is a charitable organization whose "mission includes working to protect the integrity of citizens' votes from dilution or abridgement, ensuring that voter qualification laws and election administration procedures are followed, and providing assistance to states that seek to enforce their constitutional mandate to determine the rules and laws pertaining to their own state elections." *Motion to Intervene* (ECF No. 12), at 2. The Plaintiffs assert that the Foundation is an Indiana-based 501(c)(3) nonprofit legal organization that, according to its website, "'exists to assists states and others to aid the cause of election integrity and fight against lawlessness in American elections.'" *Opposition* (ECF No. 27), at 4.

In its proposed answer in intervention, the Foundation alleges four affirmative defenses which it would like to litigate in this action. First, it alleges that to the extent Plaintiffs' complaint alleges that Nevada's recall elections violate the Voting Rights Act because the elections deny or abridge the right to vote on account of membership in a language minority group, the references to "language minorities" and "language minority groups" are facially unconstitutional because they are inconsistent with the purpose of the Fifteenth Amendment and exceed Congress's authority to enforce the right to vote regardless of race as found in the Fifteenth Amendment. Second, to the extent that Plaintiffs' complaint alleges that Nevada's recall laws as applied to the recall efforts against the subject senators violate the Voting Rights Act because the elections deny or abridge the right to vote on account of membership in a language minority group, the references to "language minorities" and "language minority groups" in the Act is unconstitutional as applied because it is inconsistent with the purpose of and exceed Congress's authority under the Fifteenth Amendment. The Foundation alleges that "speaking a language other than English is not the same, or even congruent to, inherent immutable characteristics such as race." Third, the Foundation alleges that the Plaintiffs improperly attempt to allege a claim under Section 2 of the Voting Rights Act by relying on a disparate impact standard which, if accepted, would push Section 2 beyond constitutional boundaries. In this regard, the Foundation alleges that Plaintiffs are attempting to import into Section 2, a provision of Section 5 of the Voting Rights Act which has never applied to Nevada, and which no longer applies in any state. Fourth, the Foundation alleges Plaintiffs cannot make the required showing of entitlement to relief under the Federal Rules of Civil Procedure by "'mere labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action.'" The Foundation

4

argues that the factual allegations made by Plaintiff are either false or have no relevance to a claim under Section 2 of the Voting Rights Act. *Motion* (ECF No. 12), Exhibit 1, at 13-14.

The Foundation argues that its interests in this litigation are different from those of the Defendants. It states that "the Defendants are not likely to press fully the constitutional defenses available in this case. Nor [are they] likely to press against the factual assertions contained in the Complaint as fully as they might." The Foundation states that it is unrestrained by political concerns and can provide this Court with the full range of potential constitutional and factual defects in Plaintiffs' complaint. *Motion* (ECF No. 12), at 7.

## **DISCUSSION**

The Foundation argues that it has the right to intervene in this action pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. In the alternative, it argues that it should be permitted to intervene under Rule 24(b). Plaintiffs oppose the Foundation's intervention. Defendants do not.

**1. Intervention of Right.**

Rule 24(a) states that "[o]n timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Rule 24(a)(2) is construed liberally in favor of potential intervenors. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). In determining whether intervention is appropriate, the court applies a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significant protectable interest" relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *Id.* (citing *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). Here, there is no dispute that the Foundation's motion is timely— it was filed within two weeks after the filing of the complaint. The issues in dispute are whether the Foundation has a "significant protectable interest" relating to the dispute in this case and whether its interests will be adequately

5

represented by the Defendants.

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *California ex rel. Lockyer*, 450 F.3d at 441 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). A potential intervenor is not required to demonstrate that it has any specific legal or equitable interest. "Rather, . . . a party has sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* In *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173, 1179 (9th Cir. 2011), the court stated that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."

The Foundation asserts that it is a public interest organization dedicated to protecting or promoting a legal viewpoint regarding the protection of citizens' votes from dilution or abridgement and ensuring that voter qualification laws and election administration procedures are followed, and providing assistance to the states in such matters. It argues that this purpose qualifies as a "significant protectable interest." Plaintiffs counter that the Foundation's alleged national interest in election–related issues is extremely broad and too generalized to give rise to a "significant protectable interest." They argue that the Foundation has not demonstrated any prior involvement with respect to election matters in Nevada, such as being involved in the formulation of election laws, or any other activity or expenditures of resources in Nevada. Nor has the Foundation shown that it has any Nevada members. *Opposition* (ECF No. 27), at 7. Plaintiffs argue that "accepting [the Foundation's] assertions and argument at face value would lead to the absurd result that there is no lawsuit, anywhere in the country, relating in any way to elections, in which [the Foundation] does *not* have a sufficiently significant and protectable interest entitling it to intervention as of right. This cannot plausibly be the state of the law." *Id.* at 7-8. The Foundation counters this latter argument by stating that recognizing its right to intervene in this case "would not grant [it] license to intervene in every lawsuit touching on elections. A recount challenge, for example, that did not involve questions of election integrity or the constitutional authority of the States, would clearly be outside the Foundation's exempt purpose and interests." *Reply* (ECF No. 41) at 5-6.

6

The Ninth Circuit has held that a public interest organization can have a "significant protectable interest" that satisfies that element for intervention of right. In *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983), the plaintiff, "a non-profit organization which [was] dedicated to the goal of multiple use management of public lands," sued the Secretary of the Interior challenging the legality of actions taken by the former secretary in withdrawing nearly 500,000 acres of land from potential development. The Audubon Society, a non-profit organization devoted to the protection of birds and other animals and their habitats, moved to intervene in the action to defend the former secretary's action. The court noted that the plaintiff and the Audubon Society had participated actively in the administrative process surrounding the former secretary's action, which the Audubon Society had supported and the plaintiff had opposed. *Id.* at 526-27. In holding that the Audubon Society had a significant protectable interest, the court noted that in *Washington State Building & Trades v. Spellman*, 684 F.2d 627 (9th Cir. 1982) (*cert. denied* 461 U.S. 913, 103 S.Ct. 1891 (1983)), it "held that a public interest group was entitled as a matter of right to intervene in an action challenging the legality of a measure it supported." *Id.* at 527. The plaintiff in that case sought to invalidate a law passed by the initiative process which regulated the transportation and storage of low level radioactive waste in the state. The intervenors had been actively involved in the initiative process that led to the law's enactment. *Sagebrush Rebellion* also noted *Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980), in which the court held that the National Organization for Women had the right to intervene in a suit challenging procedures for ratification of the proposed Equal Rights Amendment to the Constitution, "a cause which the organization had championed." *Id.* The court stated that "[i]n neither of these cases did this court have any difficulty determining that the organization seeking the intervene had an interest in the subject of the suit and the interest was not adequately represented by an existing party. Further, the court had no question that disposition of either suit might, as a practical matter, impair the ability of the organization to protect its interest." *Id.*

In *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), the plaintiffs challenged a law enacted through the initiative process that regulated the manner in which petition signature gatherers are paid for their services. The district court granted the motion to intervene by the state AFL-CIO and its president who had been substantially involved in the campaign that resulted in the adoption of the law. *Id.* at 952.

On appeal, the court held that the intervenors had a "significant protectable interest" related to the action which an adverse judgment might impede or impair. *Id.* at 955. The court held, however, that the intervenors' interests were adequately represented by the state, and, therefore, the district court had erred in granting their motion to intervene. *Id.* at 956-59.

This case involves a fresh challenge to an old law. Nevada's constitutional recall provision was adopted in 1912. It was amended in 1970 and again in 1996. The Foundation obviously cannot show a prior involvement with respect to the adoption of Nevada's recall provision or its amendments. Likewise, the Voting Rights Act was enacted in 1965 and has been subsequently amended. Although legal challenges to state recall laws have been mounted in other states based on the Voting Rights Act, there is no indication that such challenges have heretofore been brought with respect to Nevada's recall laws. By virtue of its mission statement, the Foundation appears to have a specific interest in supporting more stringent state regulation of elections and voter qualifications, and in limiting the scope of the Voting Rights Act, including having portions of the Act declared unconstitutional on their face or as applied. This interest does not fit squarely within past Ninth Circuit decisions regarding intervention of right. As discussed above, the court has found that public interest organizations have a significant protectable interest based on their prior involvement in the enactment of the law, regulation or administrative action that is at issue in the lawsuit. Such is not the case here. Nor has the Foundation shown that any of its members are voters in the senate districts involved in the subject recall efforts, or that it has Nevada citizen-members whose rights could be affected by future efforts to preclude or restrict recall elections. Therefore, a finding that the Foundation has a significant protectable interest would expand that concept beyond what the Ninth Circuit has previously held. Such an expansion, however, would not necessarily contradict the basic definition of a "significant protectable interest"— given that the Foundation, in fact, appears to have an established record of involvement in election matters similar to those at issue in this case.[2]

---

[2] The Foundation has pointed to cases from other circuits in which public interest groups with purposes similar to those of the Foundation have been permitted to intervene under Rule 24(b). *See Kobach v. United States Election Assistance Commission*, 2013 WL 6511874 (D.Kan. Dec. 12, 2013) and *Florida v. United States*, 820 F.Supp.2d 85 (D.D.C. 2011). The Foundation also cites *League of Women Voters v. Newby*, 195 F.Supp.3d

Where the court finds that an applicant for intervention has a significant protectable interest in the lawsuit, the court generally has little difficulty in concluding that the disposition of the case may, as a practical matter affect it. *Citizens for Balanced Use v. Montana Wilderness*, 647 F.3d 893, 898 (9th Cir. 2011) (citing *California ex rel. Lockyer*, 450 F.3d at 442). So too in this case.

The fourth element for intervention of right is whether the applicant's interests will be adequately protected by the existing parties. When the applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. *California ex rel. Lockyer*, 450 F.3d at 443 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). "Moreover, '[t]here is an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a 'very compelling showing to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the same interest.'" *Id.* The court stated that this principle is arguably nowhere more applicable than in a case where the [United States] Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment." *Id.* at 444.

In this case, both the Secretary of State and the Registrar are vigorously defending against Plaintiffs' claims, although not on the basis of the constitutional arguments that the Foundation would like to litigate. The Secretary and Registrar argue Plaintiffs' complaint should be dismissed because the Nevada recall process does not involve "state action" within the meaning of the First, Fifteenth and Fourteenth Amendments, and the Voting Rights Act. The Secretary has also gone beyond this defense in asserting the Fifth Circuit's holding in *Smith v. Winter* which stated that the Voting Rights Act does not protect the right of a minority citizen or group to maintain his/its choice in public office if successful. The Secretary and the Registrar have not argued, however, that the Voting Rights Act is unconstitutional

---

80 (D.D.C. 2016) in which the district court permitted it to intervene in the action in which the plaintiff challenged a decision by the executive director of the Election Assistance Commission that permitted states to modify the instructions on their national mail voter registration forms to require voter registration applicants to submit proof of citizenship. None of these cases involved intervention of right under Rule 24(a)(2). Nor did the courts engage in an analysis of the requirements for permissive intervention. These cases, however, provide some support for the proposition that public interest organizations with interests like those of the Foundation have been permitted to intervene in actions relating to the validity of state election procedures.

9

on its face or as applied.

It is not clear that the Court will be required to decide these constitutional issues in this case. Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision. In *Northwest Austin Municipal Utility Dist. v. Holder*, 557 U.S. 193, 129 S.Ct. 2504 (2009), for example, the Court expressed doubt as to the constitutionality of Section 5 of the Voting Rights Act, but declined to reach the issue because it could decide the case on nonconstitutional grounds. The Court stated that "'[i]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case,' *Escambia County v. McMillan*, 466 U.S. 48, 51, 104 S.Ct. S.Ct. 1577, 80 L.Ed.2d 36 (1984) (*per curiam*)." *See also Zobrest v. Catalin Foothills School Dist.*, 509 U.S. 1, 7, 113 S.Ct. 2462, 2465-66 (1993); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 2199 (1981); and *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483 (1936).

Based on Ninth Circuit precedent, it is questionable whether the Foundation has a significant protectable interest in this case such as to entitle it to intervene in this action as a matter of right. Based on that factor, the Court recommends that the Foundation's motion to intervene pursuant to Rule 24(a)(2) be denied. To the extent that the Foundation does have a significant protectable interest, however, it has satisfied the other factors. As stated in *Citizens for Balanced Use v. Montana Wilderness*, 647 F.3d 893, 900 (9th Cir. 2011), "intervention of right does not require an absolute certainty that a party's interest will be impaired or that existing parties will not adequately represent its interests. Rule 24(a) is invoked when the disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation 'unless existing parties adequately represent that interest.' Fed.R.Civ.P. 24(a)(2)." The Foundation seeks to challenge the Plaintiffs' complaint on constitutional arguments that neither the State or Registrar have raised. If the Court rejects the Defendants' arguments that the subject recall efforts do not involve state action, then it may be necessary for the Court to address those constitutional arguments.

**2. Permissive Intervention.**

Rule 24(b)(B) states that on timely motion, the district court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. The applicant

must show (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009). Where a putative intervenor has met these requirements, the court may also consider other factors in the exercise of its discretion, including "'the nature and extent of the intervenor's interest' and 'whether the intervenor's interests are adequately represented by other parties.'" *Id.* (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Rule 24(b)(3) also requires the court to consider whether intervention will unduly delay or prejudice the adjudication of the existing parties' rights. *Id.*

In *Freedom From Religion Foundation v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011), the court stated that the jurisdictional requirement stems from the concern that intervention might be used to inappropriately enlarge the jurisdiction of the district court, such as by destroying complete diversity between the parties. "But in federal-question cases, the identity of the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff. *See* 28 U.S.C. § 1331. The jurisdictional requirement, therefore, prevents the enlargement of federal jurisdiction in such cases only where a proposed intervenor seeks to bring new state law claims." *Id.* at 844 (citing *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). In this case, the Foundation seeks only to raise federal constitutional issues, not raised by Defendants, in opposition to Plaintiff's complaint which is based on federal law. The requirement for an independent grounds for jurisdiction, therefore, is not an issue with respect to the Foundation's motion to intervene.

The other requirements for permissive intervention are satisfied. The Foundation seeks to challenge Plaintiffs' action under the Voting Rights Act on constitutional grounds that have not, as yet, been raised by the Defendants. Although the Foundation may not have a "significant protectable interest" for purposes of intervention of right under Ninth Circuit precedent, it has demonstrated an interest in the issues involved in this lawsuit sufficient to support permissive intervention. The Foundation also seeks to raise constitutional defenses to Plaintiff's claims that have not been raised by Defendants and which they may choose not raise. Although the Court may not reach the constitutional questions in deciding this case, permitting the issues to be briefed by the Foundation and responded to by Plaintiffs will not cause any undue delay or prejudice the rights of the existing parties. Should the Court

determine that the constitutional questions must be addressed, the fact that they have already been briefed will serve to expedite rather than delay a final decision in this action. Defendants have expressed concern that the Foundation may engage in unnecessary and burdensome discovery if it is permitted to intervene. The issues framed in the proposed answer in intervention, however, do not indicate that significant discovery is likely to be necessary. Such issues can be dealt with in an appropriate scheduling order, or through a motion for protective order if necessary.

## CONCLUSION

Based on existing Ninth Circuit precedent, the Foundation has not demonstrated that it has a significant protectable interest that supports intervention of right under Rule 24(a)(2). The question, however, is a close one. The Foundation has demonstrated that it should be permitted to intervene in this action pursuant to Rule 24(b)(1) for purposes of raising its constitutional defenses to Plaintiffs' claims. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the Foundation's Motion to Intervene (ECF No. 12) be **denied**, insofar as it is based on intervention of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure.

## ORDER

**IT IS HEREBY ORDERED** that the Foundation's Motion to Intervene (ECF No. 12) is **granted** insofar as it moves for permissive intervention under Rule 24(b)(1) of the Federal Rules of Civil Procedure. The Foundation may file the proposed answer in intervention. The parties shall promptly confer regarding the need for discovery and/or a briefing schedule regarding the filing of further dispositive motions.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the

objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 20th day of December, 2017.

_____
GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE